IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TINAMARIE CARL,

                           Plaintiff,                OPINION AND ORDER

     v.

                                          07-C-0209-C

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Tinamarie Carl has moved for summary judgment, seeking reversal of the commissioner's decision that she is not disabled and therefore is ineligible for either Disability Insurance Benefits or Supplemental Security Income under Titles II and XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382c(a). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because the judge did not adequately consider her treating physicians' opinions, failed to assess her residual functional capacity with respect to her mental impairments, improperly articulated her credibility determination, erroneously relied on the Medical Vocational Guidelines (the grids) in making her step five finding and failed to incorporate all of plaintiff's mental

limitations into her hypothetical question to the vocational expert.  I agree with plaintiff on virtually all counts, with the exception of her challenges to the administrative law judge's reliance on the grids at step five.  At step five, the administrative law judge satisfied the prerequisites for relying on the grids by seeking the resources of a vocational expert.  The case will be reversed and remanded to the commissioner for further proceedings.

The following facts are drawn from the administrative record (AR):

RECORD FACTS

A. <u>Procedural History</u>

Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income on July 31 and August 4, 2005, alleging that she suffered from carpal tunnel syndrome and tendinitis in her arms, constant arm pain and psychological impairments.  AR 14, 71.  After the local disability agency denied her applications initially and upon reconsideration, plaintiff requested a hearing, which was held on October 24, 2006 before Administrative Law Judge Margaret O'Grady via video conference between Milwaukee and Wausau, Wisconsin.  Plaintiff was represented by counsel.  The administrative law judge heard testimony from plaintiff and neutral vocational expert Michael Guckenberg.  On December 13, 2006, the administrative law judge issued her decision, finding plaintiff not disabled.  AR 13-17.  This decision became the final

2

decision of the commissioner on February 7, 2007, when the Appeals Council denied plaintiff's request for review.  AR 4-6.

## B.  Background

Plaintiff was 44 years old on the date of the hearing, making her a "younger person" for the purposes of her applications for disability benefits.  AR 83; 20 C.F.R. §§ 404.1563(c) and 416.963(c).  Plaintiff has an eighth grade education and past work experience as a cashier, laundry worker, hotel housekeeper, deli worker, gas station manager and truck driver.

## C.  Medical Evidence

### 1.  Physical symptoms

In approximately 1997, plaintiff was diagnosed with mild carpal tunnel syndrome. On June 7, 2005, plaintiff saw Dr. Nancy Ness and her physician's assistant, Randall Brandt, for bilateral wrist pain with tingling and burning extending into her hand.   Upon examination, Ness noted that plaintiff had full range of motion and full strength in her wrists, grip strength of four out of five bilaterally, normal sensation to light touch, normal peripheral circulation, positive Tinel and Phalen test (indicating carpal tunnel syndrome) bilaterally and no swelling.  Ness diagnosed plaintiff with bilateral carpal tunnel syndrome,

prescribed Mobic, excused her from work for three weeks and referred her to occupational therapy.  AR 184.  Later that month, plaintiff reported to Ness that occupational therapy, hot and cold compresses and splints had not helped her pain, which was radiating up her arms and into her shoulders.  Ness's physical examination revealed no change except that plaintiff had a limited active range of motion because of her discomfort.  Ness increased plaintiff's dosage of Mobic, ordered electromyography testing, referred her to orthopedics and released her from work for another two to three weeks.  AR 182.

Plaintiff continued to see Ness and Brandt on a monthly basis in 2005.  In July, plaintiff reported that she was unable to see an orthopedist because she could not afford the down payment.  Exercises at home helped plaintiff's numbness and tingling but her arms still felt weak.  Ness observed that plaintiff had decreased arm and grip strength.  AR 180.  In August, Ness noted that plaintiff continued to have arm pain localized in her forearms and hands, numbness, tingling, decreased grip strength and increased tenderness in her elbows when holding her eight-pound granddaughter.  AR 177.

On September 17, 2005, a state agency consulting physician assessed plaintiff's physical residual functional capacity and determined that she could lift and carry 50 pounds occasionally and 25 pounds frequently and sit, stand and walk six hours out of an eight-hour workday.  AR 153-60.  On November 8, 2005, another state agency consulting physician

4

assessed plaintiff's physical residual functional capacity and found a more restrictive lifting and carrying limitation of 20 pounds occasionally and 10 pounds frequently.  AR 215-22.

Ness assessed plaintiff's residual functional capacity on December 20, 2005.  She found that plaintiff was limited to lifting and carrying less than 10 pounds occasionally; standing, walking and sitting for four hours total out of an eight-hour workday; occasional crouching and climbing stairs and no climbing ladders; no use of tools or sorting with her hands; avoiding concentrated exposure to extreme heat, moderate exposure to fumes and dusts and all exposure to extreme cold, wetness and hazards.  Ness stated the opinion that plaintiff had minimal grip strength and markedly limited active range of motion in reaching, handling, fingering, feeling and pushing and pulling.  In support of her findings, Ness noted that plaintiff had moderately severe peripheral vascular disease in her upper extremities that results in intermittent claudication (cramping) with even minor hand and arm muscle activity.  AR 242-44.

In January 2006, plaintiff saw Ness, who noted that she was stable.  AR 254.  Six months later, plaintiff requested updated work restrictions.  Upon examination on June 26, 2006, Brandt noted that plaintiff had a positive Tinel and Phalen test, grip strength of three to four out of five bilaterally and normal wrist and upper arm strength.  Brandt noted that plaintiff's condition was stable and released her to work for a maximum of four hours a day

at a light exertional level with occasional grasping, pinching, twisting and fine finger manipulation.  AR 260-61.

After the hearing, plaintiff's attorney submitted a letter dated November 20, 2006 to the administrative law judge stating that plaintiff had been fired from Subway because she had too many medical restrictions.  AR 18.

2.  Psychological symptoms

Plaintiff has a history of depression and post traumatic stress disorder as a result of childhood sexual abuse.  AR 189-91.  On July 29, 2005, plaintiff reported to Ness that she felt depressed.  Ness noted that plaintiff had a flattened affect and a history of bipolar disorder.  AR 180.  A month later, Ness noted that plaintiff's depression had improved considerably with Effexor.  AR 177.

On September 9, 2005, Dr. Randall Cullen, a psychiatrist, and Judy Greig, a therapist, evaluated plaintiff and diagnosed her with depressive disorder, personality disorder and a global assessment of functioning score of 65 (mild symptoms).  Plaintiff reported having crying spells and thoughts of suicide; feeling frustrated, angry and inadequate because she was unable to work; suffering from low self esteem; and being dependent on men.  Upon examination, Cullen and Greig noted that plaintiff's concentration and memory skills were intact.  AR 245-47.  They also wrote:

6

> Motivation for treatment is questionable however when asked what she did
> want to work on other then [sic] my reporting to SSI that her condition has
> become worse since she has applied, she stated that she would like me to help
> her work on her anger and frustration that she is experiencing due to being
> unable to work.

AR 246.

Dr. William Merrick, a state agency consulting physician, completed a Psychiatric
Review Technique assessment of plaintiff on September 20, 2005, noting that plaintiff's
depression did not meet the listing for affective disorders (12.04).  Under the B criteria of
the listings, Merrick noted that plaintiff had no functional limitation in maintaining her
daily activities or social functioning and no episodes of decompensation.  Merrick found that
plaintiff had only mild difficulties in maintaining concentration, persistence or pace.  AR
161-74.

Plaintiff saw Greig for weekly therapy beginning in September 2005 and reported
trouble sleeping and feeling sad and had a "poor me" attitude.  Cullen prescribed Depakote
to help with her moods and Seroquel to help her sleep.  After starting on Depakote, plaintiff
reported symptoms of anxiety, including crying, irritability, agitation and feeling
argumentative.  However, plaintiff gradually improved in October 2005 and reported that
the medications were working well.  In November 2005, plaintiff reported continued feelings
of depression and a low energy level, and Cullen prescribed Wellbutrin.  In late November

2005, she reported doing well on her medications, feeling balanced, having more self-esteem and decreased fears and feeling "a million percent better."  AR 201, 248-53.

On November 10, 2005, Dr. Jack Spear, another state agency consulting physician, completed a Psychiatric Review Technique and a mental residual functional capacity assessment of plaintiff, noting that plaintiff had both an affective disorder and a personality disorder that resulted in moderate restriction of her daily activities, moderate difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace and no episodes of decompensation.  AR 223-40.

Plaintiff continued weekly therapy with Greig in 2006 until Greig left her practice in May 2006.  AR 279-84.  In January 2006, plaintiff reported that she was in crisis because she had learned that her boyfriend was seeing someone else.  AR 248.  On February 9, 2006, plaintiff reported that she was having manic episodes and not sleeping well.  In February and March 2006, Cullen prescribed a new sleep aid medication and adjusted her Depakote dosage without much success.  AR 278.  On March 9, 2006, plaintiff reported to Greig that she felt depressed and had no options for leaving her boyfriend.  She did not want to go to work because she believed that it might jeopardize her social security benefits.  By March 22, 2006, plaintiff decided that she needed to find work because she wanted to move.  AR 282-84.

8

In April 2006, plaintiff saw a new psychiatrist, Dr. James Rohan, who noted that plaintiff suffered from bipolar disorder and switched her medication to Lithium.  On April 13, 2006, plaintiff told Greig that she had started a part-time job and reported feeling better, more positive and less depressed.  In May 2006, plaintiff stated that she loved her job and felt proud of herself.  On May 26, 2006, plaintiff told Rohan that she was working 24 hours a week as a cashier at a gas station.  Rohan noted that plaintiff's attention, concentration, motivation and energy level were adequate for her current work.  Plaintiff saw Rohan again on July 19, 2006 and reported that she began working 12 hours a week at Subway on July 13.  Plaintiff also reported sleeping eight to 10 hours a night and having a good energy level and stable mood.  Rohan noted that plaintiff's attention, concentration and motivation were adequate for her current job.  In both May and July 2006, Rohan noted that plaintiff had a sociable and appropriate affect, was responsive and spontaneous in conversation and had goal-directed and adequately organized thoughts and well-enunciated speech.  AR 270-77, 280-81.

D.  Hearing Testimony

Plaintiff testified that since July 2006, she had been working 18 hours a week as a cashier and sandwich maker at a Subway restaurant.  She worked three to six and a half hours, three days a week and primarily stood up. AR 299, 315. Between July 2004 and June

9

2006, she worked sporadically for limited periods at a time as a housekeeper, cashier and laundry worker.  She left her housekeeping job in 2005 because her doctor did not want her to push, pull, lift, make beds, clean bathrooms or do anything heavy or repetitive.  AR 300-01, 315.  Her arm problems have not improved since that time.  AR 320.

For a few months in 2005, plaintiff fed cows and chickens on her boyfriend's farm. She carried buckets of feed, but when that became too painful, she used smaller buckets and a cart to carry the feed.  When it became too much for plaintiff to even use the cart, another person was brought in to feed the animals.  She also turned on the hose to give water to the cows and in the winter months had to pull the hose out of the tank to prevent it from freezing.  AR 310-12.

Plaintiff testified that she has continuous pain in her upper forearms that worsens after working.  Plaintiff has muscle spasms in her arms and her fingers become cold and numb easily.  For two years, she has had a lack of sensitivity to heat and cold in her hands. Plaintiff has wrist pain for which she wears wrist braces.  Although she does not have severe pain while wearing the braces, she cannot wear them at work or while sleeping.  She also has occasional foot pain, regular feelings of cold and numbness in her toes and numbness in her left thigh.  Apart from the braces, plaintiff testified that nothing relieved any of her pain or numbness.  AR 305-06, 317.

10

At work, plaintiff stated that she is able to handle the refrigerated food but she switches to running the cash register after 30 to 45 minutes because her fingers turn blue. AR 307.  Her employer does not require her to lift, empty the trash, carry items from the cooler or repetitively slice food.  She has had problems trying to lift a sandwich on a pan with her right hand.  AR 316-17.

Plaintiff testified that on a daily basis, she takes the following medications without side effects: Lithium 600mg, Wellbutrin 150mg, Trazadone 150mg at bedtime, Lipitor 10mg, Celebrex 200mg and Prevacid.  AR 302.  However, none of the medications help her pain.  AR 306.  Plaintiff testified that she has been on medication for bipolar disorder on and off for the past ten years but has only felt "balanced" since June 2006.  Without medication, she loses concentration, becomes extremely moody, stays in bed, withdraws and thinks a lot about dying.  In the past, her mental health impairments have caused her to have problems in her relationships, miss work, and lose a job (in 2003).  In early 2006, she began seeing a new psychiatrist who took more of an interest in her mental health and prescribed Lithium.  Plaintiff testified that Lithium has helped her problems immensely and makes her feel well-balanced.  Her mental health impairments have not interfered with a job since 2003.  AR 318-19, 321.

Plaintiff testified that she sees a psychiatrist for medication management every six to eight weeks.  Plaintiff also was seeing a therapist two to four times a month from September

2005 until the therapist left the practice in May 2006.  No doctor has recommended continuing therapy, and because she does not have insurance, plaintiff also does not have any treatment planned for her physical conditions.  AR 312-13.

Plaintiff testified that she lives alone and can bathe and dress herself but cannot blow her hair dry or put on makeup because her arms become fatigued and shaky.  She also avoids wearing clothing with buttons and zippers.  Plaintiff testified that she occasionally cooks, washes three or four dishes after her meals and does some vacuuming.  She usually spends her free time watching television and crochets twenty to thirty minutes twice a week.  Plaintiff testified that she used to be able to crochet a mitten in 20 minutes but now can only complete the tip of a mitten in that amount of time.  Plaintiff testified that she occasionally tries to exercise her wrists, but her upper forearms cramp up and her fingers become cold.  She cannot go grocery shopping by herself and does not drive or do laundry.  AR 298, 302-04, 314.  Plaintiff testified that it takes her three or four days to clean her home if her neighbor does not help her with the vacuuming or scrubbing.  She also stated that she can sleep only four hours a night because of her depression.  AR 320.

Although plaintiff testified that she last had alcohol ten years ago, she was arrested for drunk driving following an accident in May 2006.  She explained that she had had a few cocktails because she had been evicted from her residence but that this was a one-time incident.  Plaintiff was fined but not incarcerated.  AR 304, 307-08.

12

The vocational expert testified that he would classify plaintiff's past work as a truck driver and gas station manager as semiskilled but her other past work as unskilled. The administrative law judge asked the vocational expert to consider an individual of plaintiff's age, education and work history who could perform sedentary work with the following limitations: occasional climbing, stooping, kneeling, crawling, balancing and crouching; only routine, repetitive and simple unskilled work; and frequent use of hands. The vocational expert testified that such an individual could perform a full range of unskilled sedentary work. He also stated that the individual's inability to push or pull on a repetitive basis or be exposed to hazardous material or extreme heat, cold or wetness would not place a significant limit on the number of sedentary unskilled jobs. When asked to consider the further limitation of needing to sit and stand at will, the vocational expert replied that sedentary jobs, including cashier, would be available. AR 322-27. He explained that "the positional restrictions really aren't going to apply to a sit-type job, and her ability to use her hands frequently would open up all the routine, unskilled sedentary occupations." AR 325.

### E.  The Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520, 416.920.  The administrative law judge found that plaintiff was not engaging in substantial

13

gainful activity (step one); is severely impaired by carpal tunnel syndrome, bipolar disorder, alcoholism, peripheral vascular disease, depression, personality disorder, tendinitis and post traumatic stress disorder (step two); and did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1 (step 3).  AR 16-17.  At step four, the administrative law judge assessed plaintiff's residual functional capacity, taking into account plaintiff's subjective complaints regarding her symptoms and limitations, as well as the various medical opinions in the record.  She determined that plaintiff had the residual functional capacity to perform unskilled, simple sedentary work with the limitations of no more than frequent hand use and no exposure to extreme temperatures.  AR 16.

The administrative law judge determined that plaintiff's subjective complaints suggested more severe impairment than shown by the objective medical evidence and the record as a whole.  In support of her finding, she noted that plaintiff improved with treatment and was released to work; continued to work part time at the time of the hearing; engaged in the daily or weekly activities of cooking, washing dishes, vacuuming, wrist exercises, watching television and crocheting; and was able to work even with her hand limitations in her part-time job as a cashier and sandwich maker.  AR 15-16.  Given plaintiff's activity level and part-time work, the administrative law judge did not adopt the

opinion of Dr. Nancy Ness, plaintiff's treating physician, who had stated that plaintiff could not use tools, lift, carry or sort objects effectively with her hands.  AR 16.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff could not perform her past relevant work because it exceeded the exertional limitations of her residual functional capacity assessment.  However, relying on the vocational expert's testimony and 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.25, she found that there was a significant number of jobs in the national economy that plaintiff could perform.  AR 16.


OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d

15

863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner.  <u>Edwards v. Sullivan</u>, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  <u>Treating Physician Opinion</u>

Plaintiff argues that the administrative law judge erred in not placing greater weight on the opinions of her treating physician and physician's assistant.  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  <u>Id.</u>; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p.  When, however, the record contains well-supported contradictory evidence, the treating physician's opinion

16

is just one more piece of evidence for the administrative law judge to weigh, taking into

consideration the various factors listed in the regulation.  Id.  These factors include how

often the treating physician has examined the claimant, whether the physician is a specialist

in the condition claimed to be disabling, how consistent the physician's opinion is with the

evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An

administrative law judge must provide "good reasons" for the weight she gives a treating

source opinion, id., and base her decision on substantial evidence and not mere speculation.

Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003); White v. Apfel, 167 F.3d 369, 375

(7th Cir. 1999).

Specifically, plaintiff asserts that the administrative law judge improperly rejected

Ness's and Brandt's opinions solely because plaintiff was able to use her hands in her part-

time job without regard to the other factors in 20 C.F.R. §§ 404.1527(d)(2) and

416.927(d)(2).  Although I am not persuaded that remand is required simply because the

administrative law judge failed to discuss each of the factors listed in the regulations, I agree

that she did not adequately address the opinions of plaintiff's treating providers.

After treating plaintiff monthly for seven months and examining her in December

2005, Ness stated that plaintiff was limited to lifting and carrying less than 10 pounds

occasionally; could stand, walk and sit for four hours out of an eight-hour workday; could

not use tools or sort with her hands; and had minimal grip strength and markedly limited

active range of motion, including reaching, handling, fingering, feeling and pushing and pulling. Ness explained that plaintiff had moderately severe peripheral vascular disease in her upper extremities that resulted in intermittent claudication with even minor hand and arm muscle activity. In June 2006, Brandt updated plaintiff's work restrictions, stating that plaintiff could perform a maximum of four hours of light exertional work a day (never lifting more than 20 pounds and frequently lifting 10 pounds or less) with occasional grasping, pinching, twisting and fine finger manipulation.

In considering plaintiff's residual functional capacity, the administrative law judge summarized the above opinions of Ness and Brandt but stated that she was not adopting Ness's opinion because plaintiff's activity level and part-time work indicated that she was actually doing more with her hands than her providers said that she could. See Social Security Ruling 96-2p (treating source's opinion on what individual can do despite impairments is not controlling if substantial, nonmedical evidence shows individual actually is doing more). The administrative law judge did not offer any specific explanation why she thought plaintiff could work full-time despite her providers' opinion that she was limited to four hours of work a day. Elsewhere in her decision, the administrative law judge generally noted that plaintiff had improved with treatment and was released to work; continued to work part time at the time of the hearing; engaged in the daily or weekly activities of cooking, washing dishes, vacuuming, wrist exercises, watching television and crocheting; and

18

was able to work even with her hand limitations in her part-time job as a cashier and sandwich maker.

Plaintiff asserts that the administrative law judge failed to consider the difficulties that she experienced in performing her job, the fact that she never worked more than full time or that her medical providers limited her to four hours of work a day.  See Social Security Ruling 96-8p (in assessing residual functional capacity, adjudicator must discuss claimant's ability to perform sustained work activities on regular and continuing basis, or eight hours a day, five days a week).  I agree with plaintiff that the nonmedical evidence cited by the administrative law judge does not establish that plaintiff was doing more than her providers expected.  Although plaintiff used her hands to make sandwiches and run a cash register at work, she testified that she did not lift anything, empty the trash, carry items from the cooler or repetitively slice food.  Plaintiff also explained that she even had problems trying to lift a sandwich on a pan with her right hand and often had to switch between making sandwiches and running the cash register to avoid problems with her hands and fingers.  Of more significance is the fact that plaintiff notified the judge in November 2006 that she had lost her part-time job because she had too many medical restrictions, suggesting that she could not work even part-time with her hand limitations.  There is no indication that the administrative law judge considered this evidence.

19

The only other evidence that the administrative law judge cited in support of her finding that plaintiff could frequently use her hands for full-time work were plaintiff's daily and weekly activities.  Although the administrative law judge correctly noted that plaintiff performed personal hygiene, cooked, washed dishes, vacuumed, did wrist exercises, watched television and crocheted, none of these amounted to more than minimal activities. Zurawski, 245 F.3d at 887 (ability to perform a daily routine and sporadic diversions does not refute a claim of disability); Clifford, 227 F.3d at 872 (same).  Plaintiff explained that although she can bathe and dress herself, she cannot blow her hair dry or put on makeup and avoids wearing clothing with buttons and zippers because her arms become fatigued and shaky with these activities.  Plaintiff cooks only occasionally and washes three or four dishes after her meals.  Although plaintiff stated that she tries to vacuum occasionally, she mainly relies on her neighbor to clean her home.  She crochets only twenty to thirty minutes twice a week and at a much slower pace than in the past.  Plaintiff testified that she occasionally tries to exercise her wrists, but her upper forearms cramp up and her fingers become cold. She cannot go grocery shopping by herself and does not drive or do laundry.  The limited nature of plaintiff's activities, none of which she does for substantial periods of time, is not inconsistent with her claim that she is limited to the occasional use of her hands or unable to maintain full time employment.  Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004) (plaintiff's ability to walk, drive, shop and do housework on occasion insufficient to

support finding that plaintiff could work eight hours a day, five consecutive days a week).

Defendant argues that following Ness's opinion in December 2005, Ness saw plaintiff only once and there was evidence that plaintiff's condition improved. Although she does not cite it as a reason for rejecting Ness's opinion, the administrative law judge mentioned elsewhere in her decision that plaintiff improved in 2006, citing in support the notes by Ness in January 2006 and Brandt in June 2006 that plaintiff's condition was stable. However, it is unclear whether these general references to plaintiff's stable condition meant that plaintiff was actually improving or just not getting worse. (The fact that Brandt noted plaintiff's stable condition on the same form as plaintiff's work restrictions indicates that he was not noting significant improvement in plaintiff's symptoms or limitations.) Accordingly, plaintiff's being "stable" does not establish in itself that she can perform full-time work with frequent use of her hands. See Steele, 290 F.3d at 941 (ambiguous medical reports alone did not support inference drawn by administrative law judge).

Defendant also argues that there is plenty of other evidence to support the administrative law judge's residual functional capacity determination, including plaintiff's improved mental health and physical examinations showing that she had full range of motion, normal arm and wrist strength and no swelling. However, the medical records mentioned by defendant are not necessarily inconsistent with Ness's or Brandt's opinions of plaintiff's limitations. As plaintiff points out, those same physical examinations also

21

showed that plaintiff had intermittent claudication, a positive Tinel and Phalen test and restricted active range of motion. Even if there is enough evidence in the record to support the administrative law judge's decision, she failed to build the requisite logical and accurate bridge from the evidence to her conclusion that plaintiff was capable of frequent use of her hands and full-time work. <u>Steele</u>, 290 F.3d at 941 ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [the court's] review to the reasons supplied by the ALJ."); <u>Zurawski</u>, 245 F.3d at 887.

In sum, the administrative law judge failed to appropriately consider and weigh Ness's and Brandt's assessments of plaintiff's limitations and discounted their opinions for reasons that are not supported by substantial evidence in the record. Further, these errors are not harmless. It is not clear whether the administrative law judge would have reached the same conclusions at steps four and five had she considered the fact that plaintiff lost her part-time job because she was unable to work with her hand limitations. At the hearing, the administrative law judge posed a hypothetical about an individual capable of sedentary work with frequent use of her hands, and the vocational expert replied that such an individual could perform a wide range of sedentary work. The vocational expert then testified that the individual's inability to push or pull on a repetitive basis would not be a significant limitation on the number of sedentary jobs available. However, repetitive pushing and

22

pulling are different from grasping, handling, fingering and other hand activities. The vocational expert was never asked whether an individual capable of only occasional use of her hands could still perform sedentary work in significant numbers in the national economy. In fact, his testimony that plaintiff's "ability to use her hands frequently would open up all the routine, unskilled sedentary occupations," AR 325, implies that a limitation of occasional hand use may limit the number of sedentary jobs that plaintiff could perform. Without further evidence, it would be speculation for this court to conclude that plaintiff would still be able to perform a significant number of sedentary jobs.

Accordingly, this case must be remanded to the commissioner for further proceedings. On remand, the administrative law judge should reevaluate the opinions of Ness and Brandt in a manner that is free of the errors noted in this opinion and in accordance with 20 C.F.R. §§ 404.1527(d) and 416.927(d). The administrative law judge should address the fact that plaintiff lost her part-time job and provide detailed reasons based on substantial evidence for either rejecting or adopting the opinions of plaintiff's treating physicians that she was limited to four hours of work a day and only occasional use of her hands.

## C. Mental Health Impairments

Plaintiff correctly asserts that although the administrative law judge found that plaintiff had the severe mental impairments of bipolar disorder, depression, anxiety disorder

23

and post traumatic stress disorder, she did not discuss whether plaintiff was functionally limited by these impairments.  The administrative law judge concluded only generally that plaintiff did not meet or equal a listed impairment and had the residual functional capacity for unskilled, simple sedentary work.

The commissioner has prescribed a special process for administrative law judges to follow when the claimant alleges a mental impairment.  20 C.F.R. §§ 404.1520a, 416.920a. After determining that a claimant has a medically determinable mental impairment, 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1), the administrative law judge must rate the degree of functional limitation resulting from the impairment in four broad categories: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation, 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The administrative law judge not only failed to do this, but she did not cite the specific medical facts or nonmedical evidence on which she relied in fashioning her mental residual functional capacity assessment, as required by Social Security Ruling 96-8p.

The administrative law judge did not mention the assessment performed in 2005 by Spear, a state agency consulting psychiatrist, and made only minimal reference to plaintiff's mental health improvement in 2006.  Spear found that plaintiff had moderate restrictions of her daily activities and moderate difficulties in maintaining social functioning but only mild difficulties in maintaining concentration, persistence or pace.  Although the ultimate

24

non-disability determination by Spear suggests that he determined that plaintiff retained the residual functional capacity to perform some types of work, without knowing what that residual functional capacity was, this court has no way to tell whether the cursory manner in which the administrative law judge distilled plaintiff's limitations squares with Spear's findings.

Given that plaintiff appeared to have improved by July 2006, I am not convinced that the administrative law judge's failure to evaluate plaintiff's mental impairments affected the outcome in this case. Prochaska v. Barnhart, 454 F.3d 731, 737 (7th Cir. 2006). However, it is unnecessary to decide this question in light of my decision to remand the case for other reasons. On remand, the administrative law judge should comply with 20 C.F.R. §§ 404.1520a and 416.920a and Social Security Ruling 96-8p by evaluating plaintiff's functional limitations and providing a more thorough explanation of how she arrives at her mental residual functional capacity assessment.


D.  Credibility Determination

Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if

25

such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms solely on the ground that the statements are not substantiated by objective medical evidence.  Carradine, 360 F.3d at 753.  Instead, the administrative law judge must review the entire case record with great care to determine whether the individual's statements are credible.  Id.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; and any other factors concerning the individual's functional limitations and restrictions.  Social Security Ruling 96-7p; 20 C.F.R. §§ 404.1529(c) and 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general,

an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  A credibility finding based on errors of fact or logic is not binding.  Allord v. Barnhart, 455 F.3d 818, 821 (7th Cir. 2006) (errors harmless only where inconceivable for trier of fact to have made different finding and finding stands despite flaws in analysis).

Plaintiff contends that although the administrative law judge appears to have discredited the severity of her subjective complaints, it is unclear whether the judge actually made a credibility determination as required under Social Security Ruling 96-7p.  Plaintiff also asserts that to the extent that the administrative law judge discredited her testimony, she failed to provide a sufficient rationale or support her findings with substantial evidence.

The administrative law judge determined that plaintiff's subjective complaints of pain and limitations suggested more severe impairment than shown by the objective medical evidence and the record as a whole.  Although this statement is not a model of clarity, it is reasonable to assume that the administrative law judge did not find plaintiff's subjective complaints to be persuasive, as plaintiff suggests.  However, I agree that the credibility

27

determination was inadequate.  The administrative law judge considered the same factors that she did in rejecting plaintiff's treating physicians' opinions:  two 2006 medical reports indicating that plaintiff's condition was stable and plaintiff's ability to work part-time and engage in other activities despite her alleged pain and limitations.  In addition to the previously-described flaws in her evaluation of this evidence, the administrative law judge erred by not evaluating the other factors that the commissioner has deemed relevant to credibility.  Although she listed plaintiff's prior work history, noted that plaintiff's pain worsened while working and wrote that plaintiff "wore wrist braces and took medication as recommended," AR 15, the administrative law judge never explained why she found this evidence to be proof that plaintiff must be exaggerating her symptoms.  Zurawski, 245 F.3d at 887 ("It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.").

Defendant contends that plaintiff was not credible because she lied at the hearing about her past alcohol use, but the administrative law judge did not cite that reason in her decision.  Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ").  This court's review is limited to the reasons supplied by the administrative law judge.  As discussed above, even if there were enough evidence in the record to support her credibility determination, the

28

administrative law judge still must rationally articulate the grounds for her decision in order to permit meaningful review.  <u>Steele</u>, 290 F.3d at 941.

Although I cannot say that the administrative law judge's credibility determination is incorrect, she did not make sufficiently detailed findings to support her conclusion and greater elaboration is necessary.  Therefore, on remand, the administrative law judge should make a new credibility determination that comports with 20 C.F.R. §§ 404.1529(c) and 416.929(c) and Social Security Ruling 96-7p and that is free of the errors noted in this opinion.

E.  <u>Step Five</u>

In making her step five finding, the administrative law judge relied on the testimony of the vocational expert and the Medical-Vocational Guidelines (commonly known as "the grids").  AR 16.  In response to a series of hypotheticals posed by the administrative law judge, the vocational expert testified that an individual of plaintiff's age, education and work experience with the nonexertional limitations of occasional climbing, stooping, kneeling, crawling, balancing and crouching; only routine, repetitive and simple unskilled work; no exposure to extreme temperatures; and frequent use of her hands could still perform the full range of sedentary work.  Given this testimony, the administrative law judge relied on 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.25 to determine that plaintiff was not disabled.  <u>See</u>

29

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) (grids may be employed and conclusion directed regarding disability when claimant's "vocational factors and residual functional capacity coincide with all of the criteria of a particular rule").

As plaintiff notes, in cases where a claimant's non-exertional limitations may erode the unskilled sedentary occupational base (or the number of jobs that the claimant is capable of performing), the adjudicator should use the resources of a vocational expert. DeFrancesco v. Bowen, 867 F.2d 1040, 1045 (7th Cir. 1989); Social Security Ruling 96-9p; Social Security Ruling 83-10. In this case, the administrative law judge appropriately asked the vocational expert to analyze the impact of various nonexertional limitations on the full range of sedentary work. SSR 96-9p. However, plaintiff contends that the administrative law judge erred in adopting the vocational expert's testimony because the expert did not explain why plaintiff's nonexertional limitations did not erode the occupational base for sedentary work. However, a vocational expert is "free to give a bottom line, provided that the underlying data and reasoning are available on demand." Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002); see also McKinnie v. Barnhart, 368 F.3d 907, 910-11 (7th Cir. 2004) (holding same). Because plaintiff did not question the vocational expert at the hearing about his foundation or reasoning, the administrative law judge was entitled to accept his conclusion. Donahue, 279 F.3d at 446. This holds true even if the vocational expert's testimony differed from the Dictionary of Occupational Titles, as plaintiff claims

in this case.  Id.  (Plaintiff contends that the Dictionary does not list any unskilled cashier positions at the sedentary exertional level, contrary to the vocational expert stating otherwise.)

Plaintiff also criticizes the administrative law judge for not accurately including all of plaintiff's nonexertional limitations in her hypothetical to the vocational expert by only generally asking about an individual who was capable of performing routine, repetitive and simple unskilled work.  Plaintiff's Supporting Memorandum, dkt. # 8 at 34.  As discussed above, the administrative law judge's mental residual functional capacity assessment was not clear and may be revised on remand to include further mental limitations.  As a result, it is not necessary to decide whether the administrative law judge properly framed her hypothetical.  However, to the extent that the administrative law judge revises her mental residual functional capacity assessment, she should ensure that any hypotheticals posed to the vocational expert include all of the nonexertional limitations supported by substantial evidence.  Young v. Barnhart, 362 F.3d 995, 1003 (7th Cir. 2004); Steele, 290 F.3d at 942.


ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of Social Security, denying plaintiff Tinamarie Carl's applications for disability insurance benefits and supplemental security income is REVERSED and REMANDED pursuant to

31

sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 7th day of November, 2007.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge